# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

**UTOPIAN WIRELESS CORPORATION** )
)
**Plaintiff,** )
)
v. ) Case No.:
)
**KENNETH D. KITTS, in his official** )
**Capacity as President of the University of** )
**North Alabama; and WILLIAM A. TRAPP,** )
**in his official capacity as President of the** )
**University of North Alabama Board of** )
**Trustees,** )
)
**Defendants.**

## COMPLAINT

Plaintiff, **Utopian Wireless Corporation**, hereby asserts this **Complaint** against Defendants **Kenneth D. Kitts**, in his official capacity as President of the University of North Alabama, and **William A. Trapp**, in his official capacity as President of the University of North Alabama Board of Trustees, and avers the following in supports of its Complaint:

## JURISDICTION AND VENUE

1. Jurisdiction is properly vested in this Court pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states, and the amount in controversy exceeds the jurisdictional threshold. The value of the leasehold interest that Utopian Wireless Corporation seeks to protect exceeds $75,000.00.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1), as this action is brought in the judicial district wherein the defendants reside. Venue is also proper in this judicial district, pursuant to 28 U.S.C. § 1391(b)(2), because this action involves property located within Lauderdale County, and events and omissions pertaining thereto.

**PARTIES**

3. Plaintiff, Utopian Wireless Corporation ("Utopian"), is a corporation organized under the laws of the State of Delaware, with its principal place of business at 400 Seventh Street, NW, Suite 406, Washington, D.C. 20004.

4. Defendant, Kenneth D. Kitts ("Kitts"), is a resident of Lauderdale County, Alabama and is the President of the University of North Alabama. Kitts is being sued in his official capacity as the President of the University of North Alabama.

5. Defendant, William A. Trapp ("Trapp"), is a resident of Lauderdale County, Alabama and is the President of the Board of Trustees for the University of North Alabama. Trapp is being sued in his official capacity as the President of the Board of Trustees for the University of North Alabama.

**BACKGROUND**

6. Regulation of the radio frequencies of the United States is critical to ensure: (a) that bandwidth is allocated to useful purposes that serve the public interest, such as television, radio, emergency responders, and cellular/mobile wireless transmissions; and (b) that multiple users are not utilizing the same frequencies in the same geographic regions at the same time. In order to regulate the use of radio frequencies in the United States, the Federal Communications Commission ("FCC") issues licenses that authorize a licensee to transmit on specific frequencies or ranges of frequencies in particular geographic areas. Because the licenses authorize a licensee to utilize a portion of the electromagnetic spectrum, they are commonly known as "spectrum licenses."

7. Spectrum licenses have differing restrictions on the manner in which a licensee can use licensed spectrum. For example, through different licenses, the FCC permits licensees to use

certain frequencies for FM radio transmission, cellular telephone transmission, television transmission, or air traffic control transmission.

8.      Educational Broadband Service ("EBS") is a specific kind of spectrum license. EBS is a prime wireless spectrum band that is currently being used by wireless carriers in the national provision of advanced wireless services, including mobile broadband services. Since January 10, 2005, the FCC's rules allow holders of EBS spectrum to lease their licenses to third-party wireless carriers for terms of 30 years. Prior to January 10, 2005, EBS licensees could lease their licenses only for terms up to 15 years.

9.      An EBS license authorizes a licensee to utilize a 22.5 megahertz ("MHz") wide allocation of spectrum at frequencies within the range of 2496-2690 MHz.  A prime spectrum license is a valuable commodity. EBS licensees may, consistent with the terms of their licenses and applicable FCC rules, enter into spectrum leases with third parties, authorizing the third-party lessee to use a portion or all of the EBS license holder's spectrum for commercial purposes.

10.     The FCC has issued EBS channels A1 through A4 (the "Channels") to the University of North Alabama (the "University") under EBS License WNC713 to transmit in the Florence, Alabama area.

11.     Utopian holds rights in the Channels from the University pursuant to Educational Broadband Service Lease Agreement dated May 18, 2007 (the "Agreement"), a true and correct copy of which is attached to this Complaint as Exhibit 1.

12.     Pursuant to Section 2 of the Agreement, the University and Utopian agreed to a ten-year lease term with two automatic ten-year renewal periods for a term of thirty years, unless Utopian notifies the University in writing that it declines to exercise any extension.

13. Pursuant to Sections 1.6.4 and 2 of the Agreement, the first ten-year term of the Agreement commences on the date of the FCC's final order of the approval of the long-term lease application.

14. At the time the parties entered into the Agreement on May 18, 2007, the University's EBS license was expired and canceled by the FCC for failure of the University for nearly two years to timely file a requisite license renewal application for the license by the license expiration date of July 14, 2005.

15. Pursuant to Section 10.1 of the Agreement, the parties are required to cooperate in executing and filing the necessary FCC documents required to effectuate the terms of the Agreement, including but not limited to, the long-term lease application, or FCC Form 608. As part of the consideration for the Agreement and as a service provided to the University for the Agreement, Utopian also agreed pursuant to Section 10.1 to pursue reinstatement and renewal of the canceled license at Utopian's sole expense.

16. Pursuant to Section 3 of the Agreement, Utopian agreed to pay the University $2,083.34 per month for use of the Channels commencing within 5 days after FCC final order of the approval of Form 608, Application for Spectrum Leasing Arrangement.

17. Pursuant to Section 12.2 of the Agreement, prior to terminating the Agreement for any material breach, the non-defaulting party of the Agreement must give thirty days' prior notice of a material breach of the Agreement to the defaulting party. The notice must be in writing and sent by a "reliable national express overnight delivery service" in accordance with Section 19 of the Agreement.

18. Pursuant to Section 16 of the Agreement, the University agreed to "use its best efforts to obtain and maintain all licenses, permits and authorizations required or desired by

[Utopian] for the use of the *Channels*, and will remain eligible under the FCC Rules to provide the *Lessee Capacity*." (Emphasis in original). The University also agreed to "take all necessary steps to renew the *License*, as required, and will not commit any act, engage in any activity, or fail to take any action that could reasonably be expected to cause the *FCC* to impair, revoke, cancel, suspend or refuse to renew the *License*." (Emphasis in original).

19. Pursuant to Section 20.2 of the Agreement, the University agreed that Utopian "will be entitled to injunctive relief and specific performance of the Agreement" upon the University's failure to perform its duties under the Agreement.

20. Pursuant to Section 20.3 of the Agreement, the prevailing party in any action "on account of any breach of or to enforce or interpret any of the terms, covenants or conditions of this Agreement" shall be entitled to reasonable attorneys' fees and costs.

21. The University and Utopian also entered into an EBS Equipment Lease dated October 2011 (the "Equipment Lease"), whereby Utopian leased to the University wireless link equipment required for the operation of the spectrum license involved in the Agreement. Per the terms of the Equipment Lease, Utopian sent the equipment to the University. The University accepted, and after following Utopian's guidance and cooperating with the installation, the University utilized the equipment to operate the EBS license. A true and correct copy of the Equipment Lease is attached to this Complaint as Exhibit 2.

22. The installation and/or use of the equipment allowed the University to achieve substantial service compliance with the FCC's licensing requirements and to preserve its license. Prior to Utopian's involvement in the Agreement, the University allowed its FCC license to expire. As a direct result of Utopian's involvement in the Agreement, Utopian caused the FCC to reinstate the University's canceled EBS license. The University was later able to meet its substantial service

obligations with the FCC after Utopian furnished the necessary equipment and assistance for the University to operate the license. Upon information and belief, the University continues to be in possession of and is operating the equipment provided by Utopian.

23. On or around October 26, 2020, Utopian mailed a letter to the University enclosing a check in the amount of $2,083.34 for the monthly fee under the Agreement. The University returned the check.

24. On or around November 5, 2020, Utopian mailed another letter to the University enclosing a check in the amount of $2,083.34 for the monthly fee under the Agreement. The University again returned the check.

25. On or around December 2, 2020, Utopian e-mailed the University requesting that the University file Form 608 for the long-term lease application.

26. On December 3, 2020, Utopian received a letter from counsel to the University disavowing the existence of the Agreement. According to the University, because Form 608 was never filed, the Agreement never became effective.

27. On or around January 12, 2021, the University mailed a letter to Utopian, again disavowing the existence of the Agreement and advising that any future monthly fee payments sent by Utopian would be destroyed.

28. On or around January 22, 2021, Utopian sent another letter to the University, again requesting that the University file Form 608 for the long-term lease application. In its letter, Utopian further advised the University that, pursuant to Sections 10.1 and 20.2 of the Agreement, it was requiring the University to cooperate in filing Form 608. Utopian again enclosed a check in the amount of $2,083.34 for the monthly fee.

29. The University, through counsel, in subsequent letters and communications have continued to disavow the existence of the Agreement and refused to accept monthly fee payments by Utopian. The University has never provided Utopian with any formal default notices of the Agreement, which it is otherwise required to do, pursuant to Section 12.2 of the Agreement, before terminating the Agreement. To date, the University has not filed the required FCC form 608 for application of a long-term lease extension, despite multiple requests by Utopian.

## COUNT 1: INJUNCTIVE RELIEF AND SPECIFIC PERFORMANCE

30. Utopian adopts and incorporates by reference the previous paragraphs as though alleged fully herein *in extenso*.

31. Defendants Kitts and Trapp have the responsibility to perform their legal duties, including following established procedures and guidelines for the performance, recognition, cooperation, and/or payment of the University's contractual obligations to Utopian

32. The University, Kitts, and Tripp contracted for goods and/or services with Utopian, accepted those goods and/or services, and are therefore entitled to perform under the Agreement and/or compensate Utopian for those goods and/or services.

33. Pursuant to Section 20.2 of the Agreement, the University expressly agreed to injunctive relief and specific performance as a contractual remedy in the event of the University's failure to perform its duties under the Agreement.

34. In entering into the Agreement to obtain Utopian's services to cause the reinstatement of the University's expired and canceled EBS license, and accepting, installing, and utilizing Utopian's equipment to achieve compliance with the FCC for the license, as well as agreeing with Utopian in writing to lease spectrum rights in exchange for monthly fees, but

disavowing the existence of such Agreement, Kitts and Trapp failed to perform their duties, meet their responsibilities, or follow the established guidelines or procedures.

35. Utopian seeks a writ of mandamus, injunctive relief, specific performance, and/or other relief to which it may equitably be entitled, including but not limited to: an order compelling Kitts and Trapp to cooperate with Utopian in filing the Form 608 for the long-term lease application, and enjoining Kitts and Trapp from disavowing the existence of the Agreement.

**WHEREFORE**, Plaintiff, Utopian Wireless Corporation, prays that the Defendants, Kenneth D. Kitts and William A. Trapp, be duly cited and served with a copy of this Complaint and be commanded to respond thereto, and that, after all due proceedings, there be judgment rendered in favor of Utopian and against Defendants for relief including, but not limited to:

a. a writ of mandamus compelling Defendants to file the Form 608 for the long-term lease application, as provided in the Agreement;

b. specific performance by filing the required FCC Form 608 application for a long-term lease application;

c. injunctive relief enjoining Defendants from disavowing the existence of the Agreement and/or declaratory relief that the Agreement is in full force and effect;

d. attorneys' fees and costs; and

e. any other relief in law and/or equity that this Court deems appropriate.

Dated: November 26, 2024              Respectfully submitted,

                                      /s/Vincent J. Graffeo
                                      Vincent J. Graffeo
                                      Attorney for Plaintiff Utopian Wireless Corporation
                                      Graffeo Law, LLC
                                      2119 3rd Ave. N., Suite 203
                                      Birmingham, AL  35203
                                      Telephone: (205) 994-8249

          Fax: (205) 994-8215
          Email: vincent@graffeolaw.com

          Ryan O. Luminais, *Pro Hac Vice* anticipated
          Curtis J. Case, *Pro Hac Vice* anticipated
          Sophie Rae Trosclair, *Pro Hac Vice* anticipated

**OF COUNSEL:**
GRAFFEO LAW, LLC
2119 Third Avenue North, Suite 203
Birmingham, AL 35203
205-994-8249 (main)
205-994-8215 (fax)
vincent@graffeolaw.com

Ryan O. Luminais, *Pro Hac Vice* anticipated
Curtis J. Case, *Pro Hac Vice* anticipated
Sophie Rae Trosclair, *Pro Hac Vice* anticipated
SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C.
909 Poydras Street Suite 2800
New Orleans, LA 70112
504-299-2100 (main)
Email: rluminais@shergarner.com
       ccase@shergarner.com
       strosclair@shergarner.com

*Counsel for Plaintiff Utopian Wireless Corporation*

**PLEASE SERVE DEFENDANTS VIA CERTIFIED MAIL**

Kenneth D. Kitts, President
University of North Alabama
One Harrison Plaza
Florence, AL  35632

William A. Trapp, President
University of North Alabama Board of Trustees
One Harrison Plaza
Florence, AL  35632

Steven T. Marshall, Alabama Attorney General
Office of the Attorney General
501 Washington Ave.
Montgomery, AL  36104