IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| UTOPIAN WIRELESS CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:24-cv-01644-HNJ |
| ) | |
| KENNETH D. KITTS, in his official ) | |
| capacity as President of the University ) | |
| of North Alabama; and WILLIAM ) | |
| A. TRAPP, in his official capacity as ) | |
| President of the University of North ) | |
| Alabama Board of Trustees, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants Kenneth D. Kitts and William A. Trapp ("Defendants"), respectfully submit this Memorandum in Support of their Motion to Dismiss Plaintiff Utopian Wireless Corporation's ("Plaintiff" or "Utopian") Complaint.

### INTRODUCTION

Utopian brings this case against Defendants Kitts and Trapp, the President of the University of North Alabama ("UNA") and the President pro tempore[1] of the

---

[1] President Trapp, while named in the Complaint as "President" of the Board, is the President pro tempore. By statute, Governor Kay Ivey is the President ex officio of UNA's Board. *Ala. Code* § 16-51-3.

1

UNA Board of Trustees, respectively. Utopian's suit arises out of a broadband radio license granted to UNA by the Federal Communications Commission ("FCC"), and a contract between Utopian and UNA concerning a putative long-term lease of that license. The contract at issue, the "Educational Broadband Service Lease Agreement" (the "Agreement"), describes the terms of a proposed lease by Utopian of four broadband channels belonging to UNA. By early 2012, UNA was supposed to file an application with the FCC seeking approval of the proposed lease. UNA promised to "cooperate as required" in filing the application and obtaining FCC approval. But no application was ever filed, and the proposed lease was never approved. Now, more than twelve years later, UNA's broadband channels are much more valuable; and Utopian, hoping for a financial windfall, has dusted off the Agreement and asks the Court to order specific performance by UNA. Utopian's case, for multiple reasons, must be dismissed.

First, and most glaringly, this suit is barred by sovereign immunity under the United States and Alabama Constitutions. Controlling authority holds that UNA is an "arm of the State" to which the Eleventh Amendment's grant of sovereign immunity extends, as is also the case with UNA's officers Kitts and Trapp. UNA and the individual Defendants are also shielded by the "nearly impregnable" wall of immunity created for the State and its instrumentalities by § 14 of the Alabama Constitution.

Even if it were not so barred, Utopian's suit fails to state a claim upon which relief can be granted, for multiple reasons. These defendants are not parties to the Agreement upon which Utopian has sued, and cannot for that reason be made to specifically perform under the Agreement. Further, Utopian has no longer has the contractual rights it claims, as the time under the Agreement during which the lease application was required to have been filed with the FCC expired well over a decade ago. To the extent Utopian claims that Defendants are somehow in breach by not "cooperating" with filing the lease application, such a claim accrued many years ago and is now barred by the statute of limitations, by laches, or both.

## BACKGROUND FACTS

This action arises out of EBS wireless spectrum channels issued by the FCC to UNA, and the May 18, 2007 Agreement between UNA and Utopian, whereby Utopian would have leased those channels from UNA. Doc. 1-1.

As the Agreement and Utopian's Complaint reflect, UNA's license to transmit on the channels expired without a timely-filed FCC renewal in 2005. Doc. 1-1, p.1; Doc. 1, ¶ 14. The parties entered into the Agreement in May of 2007, which provided for a ten-year lease of the channels, once UNA's license was renewed and once the FCC approved a long-term lease application for the channels. Doc. 1, ¶¶ 12–14. Thus, the Agreement's "Commencement Date" was specified to be "the date upon which the FCC has approved" the long-term lease application. Doc. 1-1,

3

¶ 1.6.4. Within five days following the Commencement Date, Utopian was to pay UNA a monthly fee of $2,083.34 for use of the channels. *Id.* ¶ 3.1.

Utopian omits from its Complaint several important requirements under the Agreement: that Utopian would "prepare and submit in its name all applications, amendments, petitions, requests for waivers, and all other documents necessary for the proper operation of" the channels. Doc. 1-1, ¶ 10.1. Utopian also agreed that its "regulatory counsel [would] prepare such documents" on Utopian's behalf and at Utopian's sole expense, *id.*, and that its legal counsel (at Utopian's expense) would "prepare a petition for reinstatement and renewal of the canceled License . . . ." *Id.*

The Agreement further provided that, within **90 days** of the reinstatement and renewal of UNA's license by the FCC, "the Parties agree to cooperate as required to fully prepare, file, prosecute and defend" the long-term lease application, "all at [Utopian's] expense." Doc. 1-1, ¶ 10.4. Although Utopian cagily does not plead in its complaint when the UNA license was reinstated by the FCC, that action occurred in 2011:

| | File Number | Call Sign/Lease ID | Applicant Name | FRN | Purpose | Radio Service | Receipt Date | Status |
|---|---|---|---|---|---|---|---|---|
| 1 | 0000511118 | WNWV887 | UNIVERSITY OF NORTH ALABAMA | 0005415088 | Renewal Only | IG | 07/05/2001 | Granted |
| 2 | 0001233352 | WPXQ845 | University of North Alabama | 0001750033 | New | IG | 03/13/2003 | Granted |
| 3 | 0001996058 | WNRM568 | UNIVERSITY OF NORTH ALABAMA | 0010195832 | Renewal Only | IG | 01/06/2005 | Granted |
| 4 | 0002347693 | WPXQ845 | University of North Alabama | 0001750033 | Required Notification | IG | 10/13/2005 | Accepted |
| 5 | 0003058949 | WNC713 | University of North Alabama | 0016556235 | Renewal Only | ED | 06/05/2007 | Granted |
| 6 | 0004727021 | WNWV887 | UNIVERSITY OF NORTH ALABAMA | 0005415088 | Renewal Only | IG | 05/13/2011 | Granted |
| 7 | 0004931311 | WNC713 | UNIVERSITY OF NORTH ALABAMA | 0016556235 | Modification | ED | 10/28/2011 | Granted |
| 8 | 0004931312 | WNC713 | UNIVERSITY OF NORTH ALABAMA | 0016556235 | Required Notification | ED | 10/28/2011 | Inactive |
| 9 | 0004931312 | WNC713 | UNIVERSITY OF NORTH ALABAMA | 0016556235 | Amendment (Required Notification) | ED | 12/02/2011 | Accepted |
| 10 | 0004976720 | WNC713 | UNIVERSITY OF NORTH ALABAMA | 0016556235 | Administrative Update | ED | 12/02/2011 | Granted |
| | File Number | Call Sign/Lease ID | Applicant Name | FRN | Purpose | Radio Service | Receipt Date | Status |

Federal Communications Commission, Universal Licensing System Application Search, link (showing the approval of the license in 2011) (last visited Dec. 17, 2024)[2]; *see also* Doc. 1, ¶ 21.

The parties in the Agreement agreed to cooperate to file a long-term lease application with the FCC, once UNA's license to the channels was renewed by the FCC, **within ninety days**. Under the Agreement, as previously noted, it fell to **Utopian** to have its counsel prepare the lease application. It did not do so within the time required, nor at any time in the many years that followed. There is no indication from the Complaint that Utopian ever even **attempted** to prepare or file the

---

[2] Courts may take judicial notice of a government website. *See Lowe v. Pettway*, 665 F. Supp. 3d 1313, 1330 n.13 (N.D. Ala. 2023) (taking judicial notice of reliable sources of information from the Jefferson County website); *see also R.S.B. Ventures, Inc. v. F.D.I.C.*, 514 F. App'x 853, 856 n.2 (11th Cir. 2013) (taking judicial notice of information found on the FDIC's website); *Lacy v. Bayhealth Medical Center, Inc.*, No. K20C-10-005, 2022 WL 1670042, at *2 n.17 (Del. 2022) (taking judicial notice of information from government websites). A court may consider evidence outside the pleadings on a Rule 12(b) motion to dismiss "when the document, or a portion thereof, is an adjudicative fact subject to judicial notice." *In re Gardner Denver, Inc.*, No. 8505, 2014 WL 715705, at *2 (Del. Ch. Feb. 21, 2014).

application. For aught appearing in the Complaint, Utopian did not even mention the application until late 2020, many years after the deadline. Doc. 1, ¶ 23.

Thus, the FCC was never presented with a long-term lease application, no such application was ever considered (much less granted), the "Commencement Date" under the Agreement never occurred, the channels were never leased to Utopian, and Utopian's obligation to pay UNA never arose.

Perhaps recognizing that it had failed to seek FCC approved of the proposed long-term lease (despite its obligation to do so within 90 days of license reinstatement), Utopian decided to act as if the lease had, in fact, been approved by the FCC, and that the "Commencement Date" had begun. To support that fiction, Utopian started sending monthly checks to UNA, beginning in October of 2020, which Utopian describes as "payments" due under the (non-existent) lease. Doc. 1, ¶ 23. At that time, and for months afterward, UNA returned Utopian's checks and disavowed the existence of any lease. *Id.* at ¶¶ 23–29.

Utopian filed this action on November 26, 2024—approximately thirteen years after the reinstatement of UNA's license, and more than four years after UNA advised Utopian that there was no enforceable lease.

## LEGAL STANDARD

Jurisdictional challenges are addressed under Rule 12(b)(1). *Harris v. Bd. of Trustees Univ. of Alabama*, 846 F. Supp. 2d 1223, 1229–30 (N.D. Ala 2012). A

challenge to a district court's exercise of subject matter jurisdiction based on immunity may take one of two forms: a facial or factual attack. *Boglin v. Bd. of Trustees of Ala. Agric. & Mech. Univ.*, 290 F. Supp. 3d 1257, 1261 (N.D. Ala. 2018). In a facial attack, a court must examine the pleading and any attached documents to determine whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction, while accepting the plaintiff's allegations as true and construing them favorably to the plaintiff. *Cardwell v. Auburn Univ. Montgomery*, 941 F. Supp. 2d 1322, 1327 (M.D. Ala. 2013). A factual attack challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and the court may consider matters outside of the pleadings and weigh conflicting evidence. *Id.*

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In evaluating a Rule 12(b)(6) motion, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "When considering a motion to dismiss, all facts set forth in plaintiff's complaint 'are to be accepted as true and the

court limits its considerations to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). The court must draw "all reasonable inferences in the plaintiff's favor." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. The complaint must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555; *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (noting *Twombly* formally retired "the often-criticized 'no set of facts' language previously used to describe the motion to dismiss standard") (citation omitted). "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. at

558 (quoting 5 C. Wright, A. Miller, et al., *Fed. Prac. & Proc. Civ.* § 1216, pp. 233–34 (3d ed. 2004).

## ARGUMENT

**I.     Utopian's Claims are Barred by Sovereign Immunity.**

    a.     Eleventh Amendment Sovereign Immunity

Defendants possess complete immunity to this suit under the Eleventh Amendment to the United States Constitution.  "[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists." *Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 n.3 (11th Cir. 2010).  The Eleventh Amendment provides, "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  An entity that is an arm of the state may not be sued unless the state consents. *Regents of the University of California v. Doe*, 519 U.S. 425, 426 (1997).  This immunity extends to a State's agencies, departments, or instrumentalities—what are often termed "arms of the State." *Id.* at 427 n.2.

Defendants are "arms of the state" entitled to sovereign immunity.  State universities are consistently held to be arms of their respective states. *Harden v. Adams*, 760 F.2d 1158, 1163–64 (11th Cir. 1985) (holding that Alabama's state

university boards are state agencies for purposes of the Eleventh Amendment); *Maliandi v. Montclair State Univ.*, 845 F.3d 77, 85 (3d Cir. 2016) (citing numerous courts of appeal decisions). The Eleventh Circuit has held that UNA possesses such immunity. *Mitchell v. Univ. of North Alabama*, 785 F. App'x 730, 735 (11th Cir. 2019) ("because UNA is a state university in Alabama, it is entitled to Eleventh Amendment immunity."). This immunity exists regardless of the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) ("a suit against a State is barred regardless of whether it seeks damages or injunctive relief.").

Defendants Kitts and Trapp, sued in their capacities as officers of the University, partake of this immunity as well. *See, e.g.*, *Seminole Tribe of Florida v. Florida Dept. of Revenue*, 750 F.3d 1238, 1244–45 (11th Cir. 2014); *Kashani v. Purdue Univ.*, 813 F.2d 843, 848 (7th Cir. 1987). There is a narrow exception to constitutional immunity for suits seeking to restrain or enjoin state officers from committing violations of federal law, *see Ex parte Young*, 209 U.S. 123, 159 (1908), but that exception has no application here. The Complaint does not allege any violations of federal law. Rather, it alleges that Defendants have not performed a contract (to which, incidentally, they were not parties). Doc. 1, ¶ 31. However, "*Ex parte Young* cannot be used to obtain . . . an order for specific performance of a State's contract." *Virginia Office for Protection and Advocacy v. Steward*, 563 U.S. 247, 256–57 (2011); *accord In re Ayers*, 123 U.S. 443 (1887); *MSA Realty Corp. v.*

*Illinois*, 990 F.2d 288, 294 (7th Cir. 1993) ("the Supreme Court has never approved a lower court order requiring officials of a state to take actions that constitute performance by a state of obligations that are the state's in its political capacity."). Specific performance of UNA's contract is exactly what Utopian seeks in this case. Defendants have absolute immunity from such a claim, under the U.S. Constitution.

      b.      Alabama Constitutional Sovereign Immunity

The Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. of 1901, art. I, § 14 ("§ 14"). All instrumentalities of the State of Alabama are entitled to this absolute immunity from suit. *Alabama Agric. and Mech. Univ. v. Jones*, 895 So. 2d 867, 873 (Ala. 2004); *Ex parte Tuscaloosa Cnty.*, 796 So. 2d 1100, 1103 (Ala. 2000). The Alabama Supreme Court has long recognized state-affiliated universities as entitled to sovereign immunity under § 14. *Taylor v. Troy State Univ.*, 437 So. 2d 472, 474 (Ala. 1983). "[P]ost-secondary educational institution[s] operating under the authority and supervision of the State" are entitled to absolute immunity from suit. *Shoals Community College v. Colagross*, 674 So. 2d 1311, 1313–14 (Ala. Civ. App. 1995). The immunity of state universities extends to employees of the university being sued in their official capacity. *Id.* ("Employees of state agencies, in their official capacities and individually, are also entitled to absolute immunity from suit . . . ."). When § 14 immunity is found, the "trial court is without jurisdiction to

11

entertain the action and the action must be dismissed." *Id.* at 1314 (citing *Hillyer v. Cent. Rev. Bd. for Dept. of Soc. Servs.*, 384 So. 2d 1117 (Ala. Civ. App. 1980)).

Defendants, the President of UNA and the President pro tempore of UNA's Board of Trustees, fall within § 14 immunity. *Id.* (including the president of the university in § 14 immunity); *see also Harden*, 760 F.2d at 1164 (board of trustees of a state university entitled to sovereign immunity). As such, the "State cannot be sued indirectly by suing an officer in his or her official capacity . . . ." *Lyons v. River Road Constr., Inc.*, 858 So. 2d 257, 261 (Ala. 2003). The Alabama Constitution "prohibits actions against state officers in their official capacities when those actions are, in effect, actions against the State." *Haley v. Barbour County*, 885 So. 2d 783, 788 (Ala. 2004).

In deciding this, the Court is to determine "whether 'a result favorable to the plaintiff would directly affect a contract or property right of the State.'" *Id.* (*quoting Mitchell v. Davis*, 598 So. 2d 801, 806 (Ala. 1992)); *see also Shoals*, 674 So. 2d at 1314. The Alabama Supreme Court has made clear that a suit against a state official "requesting specific performance of the State's contractual obligations" is "against the State and barred by § 14." *Ex parte Pinkard*, 373 So. 3d 192, 199 (Ala. 2022) (*citing Mitchell*, 598 So. 2d at 806).

In this case, the only claim asserted is one for specific performance, seeking to require UNA officials to allegedly comply with UNA's contract. There is no doubt

12

that the relief sought here would directly affect a property right of UNA—its rights in the EBS channels and license. It is precisely the type of suit to which UNA and its officers are constitutionally immune. Utopian's sole remedy here is to file its claim with the Alabama Board of Adjustment. *See, e.g.*, *Med. Laundry Serv., a Division of Oplco, Inc. v. Bd. of Trustees of Univ. of Alabama*, 840 F.2d 840, 841 (11th Cir. 1988). This suit is due to be dismissed.

## II. Defendants Are Not Parties to the Agreement and Cannot be Ordered to Specifically Perform It.

In a futile effort to avoid sovereign immunity, Utopian has named Presidents Kitt and Trapp as defendants instead of Utopian's contracting partner, UNA. But even if Defendants did not enjoy UNA's immunity—which they do—they are still not proper defendants in this case. Utopian's claim sounds only in contract, and Defendants are not parties to the contract sued upon.

It is axiomatic that "only a party to a contract may be sued for breach of that contract." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002); *see also Summit Inv., LP v. Sechrist Indus., Inc.*, No. 19400, 2002 WL 31260989, at *5 (Del. Ch. Sept. 20, 2002).[3] Likewise, "[s]pecific performance of a contract cannot be granted against one who is neither a party nor a privy to the

---

[3] The Agreement recites that it is to be governed by Delaware law. Doc. 1-1, p. 1, ¶ 1.2. Alabama enforces choice of law provisions in parties' contracts. *See, e.g.*, *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991) ("Alabama law has long recognized the right of parties to an agreement to choose a particular state's law to govern the agreement.").

13

contract . . . ." *Mitchell v. Brimer*, 1987 WL 5319, at *2 (Del. Ch. Jan. 12, 1987); *Nolu Plastics, Inc. v. Ledingham*, No. 20445, 2005 WL 5654418, at *2 (Del. Ch. Dec. 17, 2005) (plaintiff's claim for specific performance against individual manager of corporate defendant dismissed because manager was not party to contract; defendant, "as an individual, manager, or officer of [corporate defendant] has no obligations to [plaintiff] under" the contract).[4]

Just so here: Kitts and Trapp undertook no contractual obligations to Utopian in the Agreement; any obligations were those of UNA. Because Kitts and Trapp are not parties to the Agreement, the claim against them seeking specific performance fails to state a cognizable claim and should be dismissed.

### III. Because a Long-Term Lease Application Was Not Filed Within the Required Time, the Agreement is No Longer in Force, and Utopian is Not Able to Perform According to Its Terms.

Utopian's suit is due to be dismissed for the further reason that the contract on which its claim is based is no longer in effect. This is because the long-term lease contemplated by the contract (and to which the contract's "Commencement Date"

---

[4] Alabama law is in accord, *see, e.g.*, *Owens v. Williams*, 165 So. 2d 709, 715 (Ala. 1964) ("[t]he complainant was clearly not entitled to specific performance, for to do so would require [defendant] to perform a contract to which she was not a party."), as is the law elsewhere. *R&R Homes, Inc. v. Gellman*, 144 N.Y.S.2d 54, 55 (N.Y. Super. 1955) ("specific performance may not be decree[d] against [one] not a party to the contract"); *Villa Corp. v. S.D. Walker, Inc.*, 187 F.2d 493, 495 (3d Cir. 1951); *Dwyer v. Rothman*, 431 A.2d 1035, 1038 (Pa. Super. 1981); 81A *C.J.S. Specific Performance* § 107 (2024 Supp.) ("a stranger may not be made a party to an action for specific performance where he or she is not a party to the contract sought to be enforced . . . .") (citations omitted).

14

was tied) was never applied for, and the time under the contract for the application to be made has long since expired.

A party seeking specific performance of a contract must show, *inter alia*, the existence of a valid contract, which the party stands ready, willing, and able to perform. *See, e.g.*, *Shahan v. Shahan*, No. 6234, 2012 WL 6114972, at *4 (Del. Ch. Dec. 12, 2012); *see also Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1161 (Del. 2010) (specific performance is only available "if a party is ready, willing and able to perform under the terms of the agreement"); *Coley v. Lang*, 339 So. 2d 70, 74 (Ala. Civ. App. 1976) ("We cannot enforce a portion of an agreement which failed to materialize") (internal quotation omitted).

Here, the long-term lease contemplated by the Agreement never came into existence, because Utopian never prepared and filed the lease application with the FCC. Nor can that application be filed now without defeating the terms of the Agreement itself—because it was required to be filed within 90 days of the reinstatement of UNA's license. Doc. 1-1, ¶ 10.4. That deadline came and went more than a decade ago.

Given these facts, Utopian's case is due to be dismissed. It was obligated (with UNA's cooperation) under the Agreement to prepare, file and pay for the long-term lease application (Doc. 1-1, ¶¶ 10.1, 10.4), and to have done so within 90 days of the reinstatement of UNA's license. It did not do so, and it is not possible to do

15

so now without rewriting the parties' contract. Even if the 90-day requirement were not strictly enforced, under Delaware law Utopian would have had to file the application within a reasonable time. *See, e.g.*, *J.A. Jones Constr. Co. v. City of Dover,* 372 A.2d 540, 550 (Del. Super. 1977). More than ten years is not a reasonable time, as a matter of law. *See, e.g.*, *HIFN, Inc. v. Intel Corp.*, No. 1835, 2007 WL 1309376, at *11–13 (Del. Ch. May 2, 2007) (27-month delay in performance unreasonable as a matter of law). Utopian's requested relief is thus expressly contrary to the contract the parties made and cannot now be allowed. Nor can Utopian perform in keeping with the contract's terms. The Complaint should be dismissed.

## IV. Utopian's Claim is Barred by the Statute of Limitations.

Even assuming Utopian has an assertable claim, and that Defendants are not immune from it, such claim is patently untimely.

While Delaware law governs the contract at issue here, Alabama law determines whether Utopian's claim is timely. *See, e.g.*, *Archie v. SoFi Lending Corp.*, No. 2023-0234, 2024 WL 1335510, at *3 (Ala. Civ. App. Mar. 29, 2024) ("the procedural law of this state governs even when the substantive law of a foreign state applies"). Alabama requires all actions on unsealed contracts (as the Agreement is) to be brought within six years of the accrual of the claim. *Ala. Code § 6-2-34*. Under Alabama law, the statute of limitations for contract actions begins to run at the time

16


of the alleged breach, when a plaintiff's cause of action accrues. *See, e.g., Ex parte Booth*, 295 So.3d 647, 658 (Ala. 2019).

Utopian's contention is that UNA failed to cooperate in the filing of a long-term lease application with the FCC. Doc. 1, ¶¶ 15, 29. The contract required such application to be filed within 90 days after the FCC's reinstatement of UNA's license; as previously noted, reinstatement occurred in 2011. (Utopian in fact alleges that it caused the FCC to reinstate the license, *id.* at ¶¶ 21–22.) Thus, any claim that UNA (or Defendants) failed to file the application, or cooperate in its filing, would have accrued in early 2012. To the extent Utopian claims to have been aggrieved by UNA's or Defendants' failure to file or cooperate, that claim could, and should, have been asserted no later than early 2018. This case was filed at least six years too late.[5]

## CONCLUSION

Utopian's Complaint is due to be dismissed. Defendants are immune from suit under both the United States and Alabama Constitutions. Even if they were not immune, Defendants are not parties to the contract at issue and cannot be ordered to specifically perform it. Beyond that, the contract itself is no longer in force, and neither Utopian nor Defendants can perform in keeping with its terms. Finally,

---

[5] Should the Court conclude that the statute does not bar this claim, then the doctrine of laches surely does. *See, e.g, Haggerty v. Elyton Land Co.*, 7 So. 651, 653 (Ala. 1890) (claim for specific performance defeated by laches where plaintiff delayed more than ten years in performing his part of contract).

Utopian's suit, even without these fatal deficiencies, is clearly time-barred.  For these reasons, Defendants request that the Court enter an order dismissing this case.

Respectfully submitted,

/s/    *John E. Goodman*
John E. Goodman

/s/    *Matthew J. Lloyd*
Matthew J. Lloyd
Attorneys for Defendants

OF COUNSEL:

BRADLEY ARANT BOULT CUMMINGS, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama  35203
(205) 521-8000 (telephone)
jgoodman@bradley.com
mlloyd@bradley.com

## CERTIFICATE OF SERVICE

  I hereby that the foregoing was filed using the Court's PACER system, which will transmit a copy of the same to all counsel of record. A copy has also been served via email on the following:

>Vincent J. Graffeo, Esq.
>Graffeo Law, LLC
>2119 3rd Avenue North, Suite 203
>Birmingham, Alabama  35203
>vincent@graffeolaw.com

on this 24th day of January, 2025.

               /s/ *John E. Goodman*
                  Of Counsel